IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DELZOLA CUFFEE,

        Plaintiff,

v.                                Civil Action No. 2:04cv381

TIDEWATER COMMUNITY COLLEGE,

        Defendant.

## OPINION AND ORDER

Plaintiff Delzola Cuffee voluntarily requested and received a transfer from her accounting position to a lower classified position within Tidewater Community College ("TCC").  Although her new position falls within a lower pay band, TCC allowed plaintiff to retain her existing salary.  Once TCC accommodated plaintiff's requests, she filed this action alleging, among other things, that TCC discriminated against her by failing to reclassify upward her old position (prior to her voluntary demotion) and assigned her a heavy workload in retaliation for considering the filing of an EEOC complaint some four years earlier.  This conduct is alleged to have violated both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and sections 1981 and 1983 of Title 42 of the United States Code.  The matter is now before the Court on TCC's Motion for Summary Judgment.  (Docket No. 9).  For the reasons stated below, the Motion is **GRANTED**.

## I.   Factual and Procedural History

Plaintiff Cuffee is an African-American female who graduated from high school.  TCC first hired Cuffee in 1976 for a part-time staff position in the library.  In 1977, she transferred to the Continuing Education Office of TCC as a Clerk Typist B.  In 1979, she applied for and received a position with the Business Office as Clerk Typist C.  Once there, TCC repeatedly promoted Cuffee from Typist to Cashier to Fiscal Assistant to Fiscal Technician, and finally to Senior Fiscal Technician.

In June 1995, TCC's Vice President for Finance, Phyllis F. Milloy, transferred Cuffee to TCC's main office as the Supervisor of Accounts Receivable.[1]  Once in the main office, Cuffee began to have problems with her immediate supervisor, Vizel Townsend, who is also an African-American.  In the 1996-97 time frame, Cuffee met with Chief Accountant Reyne Buchholz to discuss her personality clash with Ms. Townsend.  Cuffee claims that Ms. Buchholz was unreceptive to her concerns and actually spat on her.  At another meeting, Ms. Buchholz allegedly told Townsend that she had "broken" Cuffee.[2] (Cuffee Affidavit ¶ 4).

_____

[1]Later that year, her job title changed to Fiscal Technician Senior.

[2]Both Ms. Buchholz and Ms. Townsend deny that either the spitting incident or the "broken" comment incident ever occurred. Nevertheless, at this stage of the proceedings, the Court must construe the facts in the light most favorable to the Plaintiff.

On November 11, 1998, Cuffee asked Ms. Buchholz to reclassify[3] upward her job from Fiscal Technician Senior to Accountant.  Ms. Buchholz had a high workload at the time, and did not respond immediately to Cuffee's request.  On November 20, Ms. Buchholz informed Cuffee that she had not yet reviewed Cuffee's request.  Cuffee interpreted this delay as racially motivated and told Ms. Buchholz so in an email sent on November 28, 1998.  Cuffee further claimed in the email that she was being treated unfairly because she had requested the reclassification of her position a year earlier.  Cuffee also complained that TCC had reclassified upward the positions of her entire staff, but not her position.

Upon receiving Cuffee's November 28 email, Ms. Buchholz asked Cuffee to direct her reclassification request to Kathleen Williamson, who was TCC's Compensation and Classification Specialist.  After reviewing the situation, Ms. Williamson recommended on December 1 that Cuffee's position be reclassified upward to that of Accountant.  This reclassification moved Cuffee's job from a Grade 8, Step 9 ($31,794) to a Grade 9, Step

---

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Matsushita Elec. Idus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Smith v. Cont'l Cas. Co., 369 F.3d 412, 417 (4th Cir. 2004); Nguyen v. CNA Corp., 44 F.3d 234, 237 (4th Cir. 1995).

[3]At TCC, the reclassification of a position is also known as a "reallocation."  For purposes of clarity, the Court will use only the term reclassification.

9 ($34,756).  Ms. Williamson did not know about Cuffee's November 28 allegations of discrimination, and based her recommendation solely on an independent assesment of Cuffee's performance and responsibilities.  Cuffee was advised on January 13, 1999 that her reclassification request was approved and would become effective on January 25, 1999.

At some point between November 11, 1998 and January 13, 1999, Cuffee partially filled out an EEOC complaint form.  The would be complaint asserted that the delay in reclassifying Cuffee's position was motivated by racial discrimination.  Specifically, Cuffee claimed in the unfiled EEOC complaint that the reclassification upward of her job was delayed while others received favorable reclassifications.  Vice President Milloy of TCC became aware of the possible EEOC complaint, and requested that Cuffee give the school five days to investigate before Cuffee filed it.  Cuffee received her promotion in the interim, and the compliant was never filed with the EEOC.

At some point, Cuffee became dissatisfied with her reclassified position because of the additional responsibility that came with the newly defined position and the understaffing of her department.  Cuffee was also dissatisfied because after the reclassification she did not receive substantial additional increases in pay (she received cost of living increases, but no "pay band" increase).  Although it is undisputed that

4

understaffing was a chronic problem within many departments in the college, Cuffee claims that the understaffing of her department was a purposeful, racially motivated attempt by her superiors to cause her to fail.

In 2003, Tosca T. Gavin became Cuffee's supervisor.  Gavin prepared a memo in February 2003 recommending that the jobs of Cuffee and two other employees, Sylvia York and Latricia Russell-Wilkerson, be reclassified upward and that these employees get "pay band" increases.  Gavin believed, and apparently told Cuffee, that she did not receive the full pay increase that she deserved in 1999 and that she should have been moved one step higher on the pay band scale.  Cuffee was a pay band level 4.  Gavin's memo recommended promoting Cuffee to a pay band level 5, the same level as Gavin herself.

TCC's Classified Salary Administration Plan requires that reclassification/promotion requests be decided upon by management before they are discussed with the affected employees.  Contrary to this procedure, Gavin shared her recommendation with Cuffee before obtaining approval for the pay band promotions.  Despite Gavin's mishandling of the situation, her recommendations were reviewed by Kathleen Williamson who, as stated before, was TCC's Compensation and Classification Specialist.  Of the three promotions that Gavin recommended, only Sylvia York, a Caucasian, eventually received a pay increase.  Although York still had a

lower salary than Cuffee and did not perform the same duties, Cuffee claims racial discrimination because only the white person in the group got a raise while the two African-Americans were refused a raise.

In late March, 2003 Lisa Barnes, a white employee, received a higher paying offer from a private company.  Ms. Buchholz, in consultation with TCC's Director of Human Resources, agreed to match the higher offer in order to keep Barnes at TCC.  Gavin's recommendation that TCC reclassify upward Cuffee's job was still pending at the time this occurred.  Cuffee characterizes Barnes' pay raise as another example of discrimination: Barnes gets more money while Cuffee's reclassification is delayed.

On April 8, 2003, Cuffee requested that TCC transfer her to the Norfolk office because she felt her workload at the main office was "unbearable."  (Cuffee Affidavit ¶ 49).  Cuffee rescinded her request for transfer when she learned that the Norfolk office was even more understaffed than the main office.

On April 24, 2003, Vice President Milloy expanded the study of the three positions suggested in Gavin's memo to one encompassing all of TCC's accounting positions.  Milloy thought it unfair to consider only three positions for reclassification and believed that a review of the whole department would ensure fairness and the best use of resources.  Cuffee, however, asserts that the expanded study was "a means to not have [her raise]

6

materialize," or at best a delaying tactic.

After Tosca Gavin resigned in July, 2003, Ms. Buchholz resumed direct supervision of Cuffee.  Cuffee claims that she thereafter "reached the height of [her] frustration" with her position (Cuffee Affidavit ¶ 23).  On September 26, 2003, Cuffee once again requested a transfer, though this time for a demotion to the job of Cashier Supervisor at the Chesapeake Campus. Cuffee claims that this transfer request was a "constructive involuntary demotion" caused by her heavy workload.  (Cuffee Affidavit ¶ 49).

After Cuffee's request for a transfer, Ms. Buchholz decided not to recommend Cuffee for a pay band increase, and Ms. Williamson decided not to recommend Cuffee for a promotion/reclassification.  Ms. Williamson concluded from her investigation that Cuffee's position and responsibilities warranted the same pay band level she was already receiving. Later, when the full Accounting study was completed by John Kunz, Human Resource Manager, he also concluded that Cuffee's position was not appropriate for upward reclassification.

Cuffee's request for transfer was granted and became effective in December 2003.  Despite the fact that her transfer was a demotion to a lower pay band job with less responsibility, Cuffee was allowed to stay at the same pay band level, and has continued to receive cost of living increases in her salary.

Indeed, the average person at Cuffee's new level makes approximately $10,000 per year less than Ms. Cuffee.

On October 31, 2003 Cuffee filed a complaint with the EEOC alleging that TCC discriminated against her.  She did not immediately serve the complaint on the school.  On November 21, Cuffee instead requested from Ms. Buchholz "retroactive" compensation for the money Cuffee claims she should have been paid since 2000 due to her increased duties.  Ms. Buchholz responded by reminding Cuffee that her position had been reclassified upward in 1999, which subjected her to the additional responsibilities about which she now complained.  On December 11, 2003 Cuffee wrote back asserting that if she were white, she would have gotten a raise in 2003.  Up until this point, Ms. Buchholz did not know that Cuffee regarded as discriminatory the 2003 decision not to reclassify upward Cuffee's position.

After being served with Cuffee's EEOC complaint, TCC responded on January 8, 2004.  The EEOC made a finding of "no cause," yet still issued Cuffee a right to sue letter on March 30, 2004.  Cuffee then timely filed this action.


## II.  Principles of Summary Judgment


The standards courts apply in their consideration of motions

8

for summary judgment are well-established.  Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Seabulk Offshore, Ltd. v. American Home Assurance Co., 377 F.3d 408, 418 (4th Cir. 2004); Walton v. Greenbrier Ford, Inc., 370 F.3d 446, 449 (4th Cir. 2004).

An otherwise proper summary judgment motion will not be defeated by a mere factual dispute between the parties unless the dispute concerns a "genuine issue of material fact." Anderson, 477 U.S. at 247-48; Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003).  A "material fact" is a fact that might affect the outcome of a party's case. See Anderson, 477 U.S. at 248; JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001); Commerce Funding Corp. v. Worldwide Sec. Servs. Corp., 249 F.3d 204, 209 (4th Cir. 2001).  Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

judgment." Anderson, 477 U.S. at 248; see also Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248; Commerce Funding Corp., 249 F.3d at 209-10; Brinkley v. Harbour Recreation Club, 180 F.3d 598, 614 (4th Cir. 1999).

Summary judgment shall be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322; see also Hooven-Lewis, 249 F.3d at 265; Johnson v. Pearson, 316 F. Supp. 2d 307, 313 (E.D. Va. 2004). The moving party has the initial burden to show the absence of an essential element of the nonmoving party's case and to demonstrate that the moving party is entitled to judgment as a matter of law. Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 185 (4th Cir. 2004); McLean v. Patten Cmtys., Inc., 332 F.3d 714, 718 (4th Cir. 2003); see Celotex Corp., 477 U.S. at 322-25. When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

10

586-87 (1986); <u>Honor</u>, 383 F.3d at 185; <u>McLean</u>, 332 F.3d at 718-
19.

In meeting this burden, the nonmoving party must "go beyond
the pleadings" and present affidavits or designate specific facts
in depositions, answers to interrogatories, and admissions on
file to establish a genuine issue of material fact.  <u>Celotex
Corp.</u>, 477 U.S. at 324; <u>see also</u> <u>M&M Med. Supplies & Serv., Inc.
v. Pleasant Valley Hosp., Inc.</u>, 981 F.2d 160, 163 (4th Cir.
1993); <u>Parker v. Westat, Inc.</u>, 301 F. Supp. 2d 537, 540 (E.D. Va.
2004).  However, the nonmoving party must rely on more than
conclusory allegations, "mere speculation," the "building of one
inference upon another," the "mere existence of a scintilla of
evidence," or the appearance of "some metaphysical doubt"
concerning a material fact.  <u>See</u> <u>Anderson</u>, 477 U.S. at 252;
<u>Matsushita</u>, 475 U.S. at 586; <u>Thompson v. Potomac Elec. Power Co.</u>,
312 F.3d 645, 649 (4th Cir. 2002); <u>Stone v. Liberty Mut. Ins.
Co.</u>, 105 F.3d 188, 191 (4th Cir. 1997); <u>Tao of Sys. Integration,
Inc. v. Analytical Servs. & Materials, Inc.</u>, 330 F. Supp. 2d 668,
671 (E.D. Va. 2004).  The evidence presented must be such that a
reasonable jury could find in favor of the nonmoving party.
<u>Anderson</u>, 477 U.S. at 252; <u>Retail Servs. Inc. v. Freebies Publ'g</u>,
364 F.3d 535, 542 (4th Cir. 2004); <u>Tao of Sys. Integration, Inc.</u>,
330 F. Supp. 2d at 671.

Summary judgment is not a "disfavored procedural shortcut."

<u>Celotex Corp.</u>, 477 U.S. at 327; <u>Sibley v. Lutheran Hosp. of Md.,</u>
<u>Inc.</u>, 871 F.2d 479, 483 n.9 (4th Cir. 1989); <u>Brown v. Mitchell</u>,
327 F. Supp. 2d 615, 628 (E.D. Va. 2004).  Rather, the summary
judgment procedure is properly regarded as an "integral part" of
the Federal Rules of Civil Procedure, which are designed to
obtain a just, expeditious, and inexpensive resolution of every
civil matter.  <u>Celotex Corp.</u>, 477 U.S. at 327; <u>Sibley</u>, 871 F.2d
at 483 n.9; <u>Graham v. Pactiv Corp. Benefits Comm.</u>, 301 F. Supp.
2d 483, 491-92 (E.D. Va. 2004).

A court "must take special care" when considering a summary
judgment motion in an employment discrimination case because the
employer's "motive is often the critical issue." <u>Beall v. Abbott</u>
<u>Labs.</u>, 130 F.3d 614, 619 (4th Cir. 1997); <u>Evans v. Techs.</u>
<u>Applications & Serv. Co.</u>, 80 F.3d 954, 958 (4th Cir. 1996);
<u>Ballinger v. N.C. Agric. Extension Serv.</u>, 815 F.2d 1001, 1005
(4th Cir. 1987).  Nevertheless, summary judgment remains an
appropriate disposition when the plaintiff is unable to prevail
on his or her discrimination claims as a matter of law.  <u>Beall</u>,
130 F.3d at 619; <u>Evans</u>, 80 F.3d at 958-59.


<u>III. Analysis</u>

<u>A. Employment Discrimination</u>


The elements required to prove a <u>prima facie</u> case of

employment discrimination are the same for claims made under either Title VII or sections 1981 and 1983.[4]  Mullen v. Princess Anne Volunteer Fire Co., 853 F.2d 1130, 1136 (4th Cir. 1988); Abasiekong v. City of Shelby, 744 F.2d 1055, 1058 (4th Cir.

---

[4]Because Cuffee has not presented any direct evidence of discrimination, the Court will examine her claims of discrimination using the burden-shifting framework established by the United States Supreme Court in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973).  See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-85 (4th Cir. 2004); Thompson, 312 F.3d at 649; Brinkley, 180 F.3d at 606-07; El v. Tek Sys., Inc., 311 F. Supp. 2d 516, 519 (E.D. Va. 2002); Wilder v. Southeastern Pub. Serv. Auth., 869 F. Supp. 409, 413 (E.D. Va. 1994).  Under that framework, a plaintiff asserting a claim under Title VII has the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence.  McDonnell Douglas Corp., 411 U.S. at 802; see also Raytheon Co. v. Hernandez, 540 U.S. 44, 50 (2003); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); Mackey v. Shalala, 360 F.3d 463, 468 (4th Cir. 2004).

Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for the defendant's employment action. McDonnell Douglas Corp., 411 U.S. at 802; see also Raytheon Co., 540 U.S. at 50; St. Mary's Honor Ctr., 509 U.S. at 506-07; Mackey, 360 F.3d at 468.  If the defendant meets this burden, then "the presumption raised by the prima facie case is rebutted" and the presumption "drops from the case."  St. Mary's Honor Ctr., 509 U.S. at 507 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 and n.10 (1981)); see also Mackey, 360 F.3d at 468.  The plaintiff then must have a "full and fair opportunity" to demonstrate, through the presentation of his or her own evidence and the cross-examination of the defendant's witnesses, that the defendant's proffered reason for its employment decision was not the true reason, but was merely a pretext for discrimination.  St. Mary's Honor Ctr., 509 U.S. at 507-08; Burdine, 450 U.S. at 253, 255-56; Hill, 354 F.3d at 285; see Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 133 (4th Cir. 2002).  Although the McDonnell Douglas framework shifts the burden of production between the parties, the plaintiff retains the "ultimate burden" of persuasion.  St. Mary's Honor Ctr., 509 U.S. at 508; Burdine, 450 U.S. at 253; see Hill, 354 F.3d at 285.

1984); Demuren v. Old Dominion Univ., 33 F. Supp. 2d 469, 478 (E.D. Va. 1999).  In order to establish a prima facie case of employment discrimination, Cuffee must show: (1) that she is part of a protected class; (2) that she was meeting her employers legitimate performance expectations; (3) that she was subjected to an adverse employment action; and, (4) that the circumstances of the adverse action "rationally support the inference that the adverse employment action was motivated by unlawful considerations." Chika v. Planning Research Corp., 179 F. Supp. 2d 575, 581 (D. Md. 2002); see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004); Ennis v. Nat'l Ass'n of Bus. and Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995).

Here, Cuffee is clearly a member of a protected class, and both sides' presentation of the facts indicate that Cuffee was at least doing an adequate job meeting TCC's legitimate expectations for her position.  However, even viewing the facts in a light most favorable to Cuffee, there is simply no basis for a claim that she was subjected to an adverse employment action.

To constitute adverse employment action, an act must adversely affect the "terms, conditions, or benefits" of an individual's employment.  Munday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 243 (4th Cir. 1997); see also James v. Booz-Allen &

Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004); Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 650-51 (4th Cir. 2002); Von Gunten v. Maryland, 243 F.3d 858, 866 (4th Cir. 2001). Cuffee makes three allegations that, if proven, would amount to adverse employment action: (1) that she experienced disparate compensation; (2) that she experienced disparate promotions; and, (3) that she was subjected to a "constructive involuntary demotion."  As demonstrated below, Cuffee cannot prove any of these claims.

## 1. Disparate Compensation

To establish disparate compensation, Cuffee must show that individuals outside of the protected class occupied jobs similar to hers (in other words, that they are "comparators"), and that she received lower compensation than those other employees.  See Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 343 (4th Cir. 1994); Chika, 179 F. Supp. 2d at 584.  Cuffee's Brief in Opposition to the Motion for Summary Judgment styles her claim as "Plaintiff Is Subjected to Disparate Pay."  Yet as evidence for this claim Cuffee points only to the fact that she was denied a raise when TCC declined in 2003 to reclassify upward her position.  This fact alone does not establish a claim of disparate pay.  As noted above, a disparate pay claim requires a

showing of disparity, _i.e._ that comparators received a higher salary.

The only conceivable basis for Cuffee's claim is that two white employees, Lisa Barnes and Sylvia York, received raises in the same time period and Cuffee did not. These individuals, however, made less money than Cuffee even after they received raises. In addition, Cuffee has not presented any evidence whatsoever that these individuals occupied positions similar to hers.

## 2. Disparate Promotion/Discriminatory Failure to Promote

To establish that TCC discriminatorily failed to promote her, Cuffee must show: (i) that she is a member of a protected class; (ii) that she applied for a promotion; (iii) that she was qualified for the promotion; and, (iv) that she was denied the promotion under circumstances that give rise to an inference of unlawful discrimination. See Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994); Amirmokri v. Baltimore Gas and Elec. Co., 60 F.3d 1126, 1129 (4th Cir. 1995); Chika, 179 F. Supp. 2d at 582. Cuffee cannot prove the last two elements of this test.

As a preliminary matter, Cuffee has not presented evidence that establishes her qualifications for the promotion. The only evidence she cites is the February 2003 memo prepared by Tosca

16

Gavin recommending that the positions of Cuffee and two other employees be reclassified upward.  However, this does not prove anything, especially since two independent assessments of Cuffee's position, one conducted by Ms. Williamson and one by Mr. Kunz, both concluded that the position did not merit a promotion/reclassification.  In fact, the assessment conducted by Mr. Kunz was completed after the plaintiff had already transferred out of the position.

As to the final element, the fact that Cuffee's position was not reclassified upward after she transferred to the Chesapeake office rebuts any inference that TCC's prior refusal to do so was motivated by discriminatory animus.  Moreover, Cuffee cannot point to any comparators who received promotions under similar circumstances.  The two individuals mentioned above, Barnes and York, occupied lower-level positions before they received any promotion and were paid less than Cuffee even after they received promotions.

### 3. Constructive Demotion

While the Fourth Circuit apparently has not yet addressed the question whether a claim for constructive demotion should be recognized under Title VII, other Courts of Appeal have recognized constructive demotion as a natural extension of

constructive discharge, holding that the same standards apply. See Fenney v. Dakota, Minn., and E. R.R. Co., 327 F.3d 707, 717 (8th Cir. 2003); Simpson v. Borg Warner Auto., Inc., 196 F.3d 873, 876 (7th Cir. 1999); Sharp v. City of Houston, 164 F.3d 923, 933-34 (5th Cir. 1999).  Also, a recent case from the District of Maryland seems to  recognize the possibility of a constructive demotion claim under Title VII.  See Bryan v. Lucent Technologies, Inc., 307 F. Supp. 2d 726, 738 (D. Md. 2004).

Assuming this Circuit would recognize Cuffee's cause of action, she can establish a constructive demotion only if she proves that TCC deliberately made her working conditions intolerable for the purpose of forcing her to seek a demotion/transfer to another department.  See Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985); See also EEOC v. Clay Printing Co., 955 F.2d 936, 944 (4th Cir. 1992); Munday v. Waste Mgmt. of N. A., Inc., 126 F.3d 239, 244 (4th Cir. 1997). The essential elements of this claim are (i) "deliberateness of the employer's action," and (ii) "intolerability of the working conditions."  Bristow, 770 F.2d at 1255.  Cuffee cannot prove either element.

To establish deliberateness, the plaintiff must provide "proof of the employer's specific intent to force [her] to leave."  Id.  This can be demonstrated either "by actual evidence of intent by the employer to drive the employee from the job" or

18

by providing "circumstantial evidence of such intent, including a series of actions that single out a plaintiff for differential treatment." Johnson v. Shalala, 991 F.2d 126, 131 (4th Cir. 1993).  The Fourth Circuit instructs that "[i]ntent may be inferred through circumstantial evidence, including a failure to act in the face of known intolerable conditions." Bristow, 770 F.2d at 1255.  However, if "all employees are treated identically, no particular employee can claim that difficult working conditions signify the employer's intent to force that individual to resign."  Id.

    Cuffee has presented no direct evidence, such as racial comments, to establish that anyone at TCC intended to drive Cuffee out of her job.  To prevail, Cuffee therefore must show through circumstantial evidence that TCC singled her out for different treatment or failed to act "in the face of known intolerable conditions."  Cuffee's only "evidence" in this regard is her own subjective feeling that her working conditions had become "unbearable" due to increased workload and understaffing. While TCC admits that Cuffee's department was understaffed, there is simply no evidence that Cuffee was singled out for this kind of staffing condition. Indeed, the record shows that several other departments of TCC were at least equally understaffed. The Norfolk office, for instance, was even *more* understaffed than Cuffee's. The record also shows that Ms. Buchholz had tried for

19

years to get more staff for all of the departments that she supervises. A plaintiff's subjective feeling that she is being targeted is not enough to establish that her employer was in fact targeting her.

In addition, Cuffee has not established the intolerable working conditions necessary to support her claim.  As discussed above, Cuffee has adequately established that her department was understaffed, but this alone does not show that her position was intolerable.  Intolerability must be established through a showing that a reasonable person in a position similar to that of the plaintiff "would have felt compelled to resign." Bristow, 770 F.2d at 1255; see also Clay Printing, 955 F.2d at 944. Cuffee has presented nothing other than her own belief to prove that a reasonable person would have felt compelled to resign. This is not enough.  "[T]he law does not permit an employee's subjective perceptions to govern a claim of constructive discharge." Bristow, 770 F.2d at 1255. As the Fourth Circuit has pointed out, "[a]lthough demotion can in some cases constitute a constructive discharge, we hold that 'dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.'" Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 187 (4th Cir. 2004) (quoting Williams v. Giant Food Inc., 370 F.3d 423, 434 (4th Cir. 2004)).

Title VII does not guarantee Cuffee or any other employee "a working environment free of stress," especially since "[e]very job has its frustrations, challenges and disappointments . . . [that] inhere in the nature of work."  Id.  Because Cuffee has failed to establish either of the required elements, her claim that she was constructively and involuntarily demoted fails.

## B. Retaliation

Cuffee also alleges that TCC's refusal in 2003 to reclassify upward her position and the assignment of an "unbearable" workload constitute retaliation against her for engaging in protected activity under Title VII.  Cuffee identifies this "protected activity" as her plan to file an EEOC complaint in 1999 and her complaints to Ms. Buchholz in 1998.

To establish a prima facie case of retaliation, an employee must show that "1) the employee engaged in protected activity; 2) the employer took adverse employment action against the employee; and 3) a causal connection existed between the protected activity and the adverse action."  Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985); see also Munday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 242 (4th Cir. 1997).  Once this prima facie case is established, the employer can rebut it with evidence of a non-discriminatory reason for the adverse action.

Munday, 126 F.3d at 242.  At this point, the burden shifts back to the employee to show that the reasons given by the employer are merely pretext for discrimination.  Id.  As discussed below, Cuffee cannot prove any of the three elements necessary to prove retaliation.

1. Protected Activity

To establish that she engaged in a protected activity, Cuffee must show that she (i) took some action to oppose an employment practice that she *subjectively* in good faith believed was unlawful, and (ii) that this belief was *objectively reasonable* in light of the facts.  Peters v. Jenney, 327 F.3d 307, 320-21 (4th Cir. 2003).  To satisfy the protected activity element then, a plaintiff need not show that unlawful employment practice was actually occurring but must merely show that she had a good faith, reasonable belief that such activity was occurring.  See Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir. 2002).

Cuffee has alleged activities that fall under two different clauses in the Title VII retaliation statute.  Her first claim (i.e., contemplating and partially filling out an EEOC complaint) falls under the "participation" clause.  This requires that a plaintiff have "made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). Cuffee's second claim (<u>i.e.</u>, making complaints to Ms. Buchholz about perceived discrimination) falls under the "opposition" clause, requiring that she have "opposed any practice made an unlawful employment practice." <u>Id</u>.

Cuffee's participation claim clearly fails as no "investigation, proceeding, or hearing" took place. Partially filling out an unfiled EEOC complaint does not amount to participation in a proceeding.

Nor did Cuffee engage in action that qualifies under Title VII's opposition clause. Opposition does not require that an employee "engage in the formal process of adjudicating a discrimination claim." <u>Laughlin v. Metro. Washington Airports Auth.</u>, 149 F.3d 253, 259 (4th Cir. 1998). Rather it "encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." <u>Id</u>. A court is required to apply a test in this scenario that balances the Title VII purpose of protecting reasonable opposition activity with the equally important desire of Congress not to tie the hands of the employer in directing its own employees. <u>Id</u>.

As discussed above, Cuffee must prove that her subjective belief TCC was discriminating against her was also objectively reasonable. This she cannot do. After Cuffee sent her

reclassification request to Ms. Buchholz, she waited only nine days before complaining to Ms. Buchholz about the wait.  For a mid-level manager with a high workload and responsibility for multiple departments to take nine days or even longer to look at any given request, particularly one asking to have a position reclassified, is manifestly reasonable.  No reasonable employee would automatically assume that such a delay was racially motivated.

Since Cuffee's subjective belief of discrimination was objectively unreasonable, her claim fails the balancing test as well.  The interest of TCC in making decisions concerning its own work force clearly outweighs Cuffee's interest in making unreasonable complaints about a delay that most employees would not even interpret as unusual, much less discriminatory.  This is particularly true with respect to a supervisor as busy as Ms. Buchholz was.

## 2. Adverse Employment Action

As discussed in detail above, Cuffee has suffered no adverse employment action that would support a retaliation claim.  Additionally, any claim of adverse employment action is even more severely undercut in the retaliation context since Cuffee was promoted and given a raise shortly _after_ engaging in the

allegedly protected activity. Therefore Cuffee also cannot prove the adverse employment action element of the retaliation test.

### 3. Causal Connection

The most fundamental requirement for showing a causal link between the protected activity and the adverse employment action is that the decision-maker have knowledge of the employee's protected activity. Dowe v. Total Action Against Poverty, 145 F.3d 653, 657 (4th Cir. 1998). Cuffee does not dispute that Ms. Williamson, who made the ultimate decision regarding Cuffee's reclassification request in 2003, never knew of Cuffee's discrimination allegations or the potential EEOC complaint in 1999. This renders impossible any causal link between the partially filled out complaint form and TCC's refusal to reclassify upward her position in 2003.

Nor can Cuffee show that her increased workload in 2003 was causally connected to some protected activity. If a relatively short period of time exists between the protected activity and the adverse action, this is sufficient to infer causation. Id. However, a long intervening period does not give rise to any such inference and in fact has the opposite effect. Id. As the Fourth Circuit has pointed out, "[a] lengthy time lapse between the employer becoming aware of the protected activity and the

alleged adverse employment action. . . negates any inference that a causal connection exists between the two." Id.  As to what constitutes a "lengthy time lapse," the Fourth Circuit has held that a period as little as six months "is sufficient to negate any inference of causation." Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001); see also Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) (holding that thirteen months negates causation); Dowe, 145 F.3d at 657 (three years negates causation).

Four years elapsed between Cuffee's complaints to Ms. Buchholz in 1998 and the "unbearable" job conditions that "forced" her to seek demotion in 2003.  This lengthy time lapse negates any inference that Ms. Buchholz retaliated against Cuffee.  Therefore, Cuffee cannot satisfy the causal connection element of the retaliation test.

## IV. Conclusion

For the reasons stated above, the Motion for Summary Judgment of Tidewater Community College is **GRANTED,** and this action is **DISMISSED WITH PREJUDICE.**

The Clerk is hereby **DIRECTED** to forward a copy of this Opinion and Order to counsel of record.

**IT IS SO ORDERED.**

_____/s/_____
WALTER D. KELLEY, JR.
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
January 17, 2006